**Beverly A. DAVIS, Appellant,**

v.

**Janice HORTON, Individually and in her capacity as Webster County Treasurer, and Webster County, Iowa, Appellees.**

No. 02–0160.

Supreme Court of Iowa.

May 7, 2003.

Roger J. Kuhle and John O. Haraldson of Law Office of Roger J. Kuhle, P.C., West Des Moines, for appellant.

Mark W. Thomas and Lisa R. Perdue of Grefe & Sidney, P.L.C., Des Moines, for appellees.

CARTER, Justice.

Plaintiff, Beverly Davis, appeals from an adverse summary judgment in her action for wrongful discharge against Janice Horton, the Webster County Treasurer, in whose office she was employed, and Webster County. The suit is based on an alleged violation of 42 U.S.C. § 1983 and on an alleged retaliatory discharge for reasons that contravene an established public policy. The district court granted defendants' motion for summary judgment. Upon reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Davis had been an employee of the Webster County treasurer's office since February 28, 1977. She was originally hired by Bob Hottman, the county treasurer at that time, and was eventually promoted to second deputy clerk in 1991. Horton was elected county treasurer in 1994 and appointed Davis as first deputy clerk. At the time of Horton's election, the parties had worked together in the treasurer's office for about fifteen to twenty years.

In 1998 the parties began having difficulties at work. Davis complained that Horton told others that Horton's previous hospital admission was caused by Davis. Horton made derogatory comments about Davis's husband and accused Davis of planning to run against her in the next election. Horton complained about Davis's work performance, attitude, and Davis's numerous calls to her husband.

The county assessor, a mutual friend, became involved and attempted an informal mediation of the dispute between Davis and Horton. In July 2000 the county assessor was involved in a second infor-

mal mediation, which also involved two county supervisors.

On October 16, 2000, Davis followed the advice of a county supervisor and wrote the board of supervisors to request formal mediation of her dispute with Horton pursuant to a provision contained in a county employee handbook. The board of supervisors appointed Irene Blair to mediate the dispute between the parties. Ms. Blair met with both parties individually and then met with both of them on October 30, 2000. Following the conclusion of the mediation efforts by Blair, Horton decided to put Davis on sixty days probation and demoted her to second deputy clerk.

On November 1, 2000, attorney Stuart Cochrane wrote to the board of supervisors on Davis's behalf asserting that the demotion was illegal and demanded that the action be rescinded. On November 29 Davis was terminated from her employment by Horton. Other facts that relate to this dispute will be considered in connection with our discussion of the legal issues presented.

### I. *The Claim Involving 42 U.S.C. § 1983.*

Davis's employment-related claim alleging a violation of 42 U.S.C. § 1983 was rejected by the district court. In order to succeed on that claim, she must necessarily show that her discharge adversely affected some property interest and was carried out without granting her due process of law. *Bd. of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548, 556–57 (1972). Because she does not contend that she was other than an at-will employee, she did not possess a property interest in continuing employment and thus a requisite element for a claim under 42 U.S.C. § 1983 is missing. *Rinard v. Polk County,* 516 N.W.2d 822, 823 (Iowa 1994); *City of Clin-*

*ton v. Loeffelholz,* 448 N.W.2d 308, 311 (Iowa 1989). The district court did not err in granting summary judgment against Davis's § 1983 claim.

### II. *The Contention That Davis's Discharge Violated Public Policy.*

In support of her contention that the termination of her employment was in contravention of public policy and thus subject to legal redress, Davis asserts that the reason for her termination was either (1) her participation in the mediation program established in the manual for county employees, or (2) the hiring of an attorney to pursue her rights, or both of these reasons. She urges that both participation in an employer-sponsored mediation program and the hiring of an attorney are protected interests that may not be made the basis for a termination of employment.

An action for the tort of wrongful discharge exists when a protected activity has been recognized through the implementation of an underlying public policy that would be undermined if an employee were discharged from employment for engaging in that activity. *Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 281 (Iowa 2000). An employee asserting a wrongful-discharge claim based on violation of public policy must satisfy the court as to all of the following factors:

(1) The existence of a clearly defined public policy that protects an activity.

(2) This policy would be undermined by a discharge from employment.

(3) The challenged discharge was the result of participating in the protected activity.

(4) There was lack of other justification for the termination.

*Id.* at 282. These requirements have been identified as the clarity element, jeopardy

element, causation element, and absence-of-justification element. *Id.*

■ We do not limit the public-policy exception to at-will employment relationships to the mandates of specific statutes but may imply a prohibition against termination if the policy basis for so doing clearly appears from other sources. *Borschel v. City of Perry,* 512 N.W.2d 565, 568 (Iowa 1994). In so doing, however, we proceed cautiously and will only extend such recognition to those policies that are well recognized and clearly defined. *Fitzgerald,* 613 N.W.2d at 283.

■ In analyzing Davis's claim based on participation in a mediation process, we are satisfied that the mediation of disputes, although encouraged and frequently beneficial, is not an activity so imbued with public purpose as to satisfy the clarity element that our cases require. In addition, we are convinced that the causation element for that claim must also be resolved against Davis. The mere fact that an adverse employment decision occurred after her participation in a mediation process is not sufficient to support a decision that the adverse employment decision was in retaliation for her mediation effort. *See Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 203 (Iowa 1997) (fact that discharge occurred one month after employee made discrimination claim not sufficient to establish causation).

The facts of the present case strongly suggest that the mediation process was not the final straw in Horton's decision to terminate Davis's employment. The mediation merely resulted in placing Davis on a probationary status. The termination occurred after Davis, acting through an attorney, challenged Horton's disciplinary sanction.

■ Davis also contends that her severance from employment occurred because she hired an attorney. She urges that an adverse employment decision based on the seeking of legal assistance offends against a well-established public policy. Some support for that contention is found in *Thompto v. Coborn's Inc.,* 871 F.Supp. 1097 (N.D.Iowa 1994). In that case, the federal court recognized a cause of action for retaliatory discharge in violation of public policy when the discharge was based upon the consultation or threat of consultation with an attorney. *Thompto,* 871 F.Supp. at 1121. We are convinced, however, that on the facts of the present dispute it is clearly impossible to separate Davis's act in hiring an attorney from her act in challenging a personnel decision made by her employer. Because an at-will employee may expect an adverse reaction to an attempted rebuke of an employer's personnel decision, that act should not be insulated from sanction merely because it has been carried out through an attorney.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except LARSON and CADY, JJ., who take no part.