# IN THE SUPREME COURT OF IOWA

No. 07–1495

Filed March 13, 2009

**JEFFREY GEORGE,**

  Appellant,

vs.

**D.W. ZINSER COMPANY,**

  Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, James H. Carter, Judge.

Employee challenges district court's dismissal of his petition asserting claims of retaliatory discharge and unpaid wages against his former employer. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED.**

Matt J. Reilly of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for appellant.

Charles A. Blades of Scheldrup, Blades, Schrock, Sand, Aranza, P.C., Cedar Rapids, for appellee.

**STREIT, Justice.**

After noticing his employer's failure to take certain required safety precautions during lead abatement jobs in violation of Iowa's Occupational Safety and Health Act (IOSHA), Iowa Code chapter 88 (2007), Jeffrey George filed a complaint with the Iowa Division of Labor Services Occupational Safety and Health Bureau (the Division). Soon thereafter, his employment with the company was terminated. George filed another complaint with the Division alleging retaliatory discharge in violation of IOSHA as well as a claim for wrongful discharge in the district court. The Division dismissed George's complaint. The district court also dismissed George's complaint on the grounds of res judicata, concluding the Division's dismissal precluded further litigation on the issue. George appealed. Because the Division's investigation and dismissal was not an adjudication, res judicata does not preclude George's action in the district court. Further, the remedy provided in IOSHA is not exclusive, and George may bring a common law action for wrongful discharge in the district court.

## I. Background Facts and Prior Proceedings.

On January 18, 2007, Jeffrey George filed a complaint with the Division, alleging his employer, D.W. Zinser, violated provisions of IOSHA. The complaint arose out of violations George witnessed while performing lead abatement jobs for D.W. Zinser in September and October 2006. As a result of a subsequent investigation, D.W. Zinser was cited for eight serious IOSHA violations and assessed penalties on February 8, 2007.

On or around January 23, D.W. Zinser learned IOSHA complaints had been filed against the company. Michael Zinser left two messages on George's voicemail that day indicating they needed to speak as soon as

possible. On January 24, David Zinser told George he should return the company truck that had been assigned to him, and there was no work available for him. On January 29, George met with David Zinser. Following the advice of the Division, George carried a concealed recording device. On February 1, George had another similar meeting. Although much of the recordings was inaudible, it seems that David Zinser was not going to give George work because of the IOSHA situation. George's employment with D.W. Zinser was subsequently terminated.

In March, George filed a complaint with the Division alleging he was discharged in retaliation for reporting unsafe working conditions. On April 4, the Division dismissed George's complaint. George appealed, and the interim labor commissioner affirmed the dismissal. The commissioner found that George, along with other employees, was laid off on January 12, before George filed his complaint regarding the IOSHA violations. George did not seek judicial review of the commissioner's decision under Iowa Code section 17A.19 (2007).

On March 12, while the complaint was still under investigation, George filed a lawsuit in the district court containing the same retaliation claim as well as a claim for unpaid wages under Iowa Code chapter 91A (2007). After learning the Division dismissed George's complaint, D.W. Zinser filed a pre-answer motion to dismiss, arguing Iowa Code section 88.9(3) provides the exclusive remedy for pursuing retaliation claims under IOSHA, and the doctrine of res judicata bars George from relitigating that issue in district court. George resisted the motion to dismiss and asserted the motion should be treated as a motion for summary judgment because it relied on matters outside the pleadings. The district court agreed and considered the motion to dismiss as if it were a motion for summary judgment. The district court dismissed

George's petition with prejudice on the grounds that "the final adjudicatory decision of an administrative agency is entitled to res judicata effect as if it were the judgment of a court." The district court declined to rule on whether the statutory remedies provided in Iowa Code section 88.9(3) are exclusive because it identified the preemption issue as "troublesome" and decided it would be clearer to dispose of the case on grounds of res judicata. George appealed. The court of appeals affirmed, concluding George had "a full and fair opportunity to litigate the retaliatory discharge claim in the administrative proceedings in this case." However, the court of appeals reinstated George's wage claim which had been dismissed by the district court.

**II. Scope of Review.**

As the motion to dismiss in this case relied on matters outside the pleadings and both parties and the court treated it as a motion for summary judgment, we will do so as well. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 311 (Iowa 1982) (recognizing, in certain situations, where a motion to dismiss relies on matters outside the pleadings, "the proper procedure is to treat the motion as one for summary judgment"); *see also Stotts v. Eveleth*, 688 N.W.2d 803, 812 (Iowa 2004) (treating a motion to dismiss as a motion for summary judgment to conserve judicial resources).

A ruling on a motion for summary judgment is reviewed for correction of errors at law. *City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3).

### III. Merits.

**A. Res Judicata.** Today we determine whether an administrative decision made after a brief investigation is a final adjudicatory action entitled to preclusive effect. The doctrine of res judicata prevents a party from relitigating a claim or issue that has already been determined by a final judgment. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469, 475 (1970); *see also Christenson,* 718 N.W.2d at 297. Res judicata, or claim preclusion, applies only when a party has had a "full and fair opportunity" to litigate in the first trial. *Spiker v. Spiker,* 708 N.W.2d 347, 353 (Iowa 2006). A party asserting res judicata must establish the following:

> (1) "the parties in the first and second action were the same";
> (2) "the claim in the second suit could have been fully and fairly adjudicated in the prior case"; and (3) "there was a final judgment on the merits in the first action."

*Id.* (quoting *Arnevik v. Univ. of Minn. Bd. of Regents,* 642 N.W.2d 315, 319 (Iowa 2002)). A party asserting issue preclusion, or collateral estoppel, must establish the following:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 397 (Iowa 1988) (citation omitted).

An agency determination will be entitled to preclusive effect in a judicial proceeding "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. . . ." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S. Ct.

1545, 1560, 16 L. Ed. 2d 642, 661 (1966); *see also Lagle*, 430 N.W.2d at 397–98. "[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments § 83 (1) (1982). In determining whether the agency is acting in a judicial capacity, we look to the factors set forth in the Restatement.

> (2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:
>
> > (a) Adequate notice to persons who are to be bound by the adjudication . . . ;
> >
> > (b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
> >
> > (c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;
> >
> > (d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and
> >
> > (e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Restatement § 83; *see Bennett v. MC # 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998). Our cases are in accord with the rationale set forth in the comments to section 83 of the Restatement.

> "Where an administrative agency is engaged in deciding specific legal claims or issues through a procedure substantially similar to those employed by courts, the agency is in substance engaged in adjudication. Decisional processes using procedures whose formality approximates those of courts may properly be accorded the conclusiveness that attaches to judicial judgments."

*Bennett*, 586 N.W.2d at 517 (emphasis removed) (quoting Restatement § 83 cmt. b).

Another crucial factor the Restatement identifies in determining whether res judicata applies to an agency action is whether the individual is able to exert control over the proceeding.

> In some types of administrative proceedings, the victim of a statutory wrong may complain to the agency but not be given initiative or control of an enforcement proceeding. In such circumstances the agency rather than the victim is the party to whom the rules of res judicata apply.

Restatement § 83 cmt. c. Although our case law has not yet applied this comment, we find the logic persuasive.

The Division, in investigating George's complaint and subsequently dismissing it, was not acting in a judicial capacity. Neither the procedure nor the investigation meets the requirements to be granted preclusive effect in a judicial proceeding. First, the procedure described by statute itself does not bear much resemblance to an adjudication. To begin the process, George filed a complaint as described under Iowa Code section 88.9(3)(*b*)(1).

> (1) An employee who believes that the employee has been discharged or otherwise discriminated against by a person in violation of this subsection may, within thirty days after the violation occurs, file a complaint with the commissioner alleging discrimination.

George filed a complaint in March, complete with a list of witnesses to contact and the tape recordings of the meetings with David Zinser.

As described in the statute, the administrative investigation conducted by the commissioner does not have the characteristics of an agency adjudication, as set forth in the Restatement.

> Upon receipt of the complaint, the commissioner shall conduct an investigation *as the commissioner deems appropriate.* If, upon investigation, the commissioner determines that the provisions of this subsection have been violated, the commissioner shall bring an action in the appropriate district court against the person. . . .

Iowa Code § 88.9(3)(*b*)(2) (emphasis added). The statute instructs the commissioner to conduct an investigation and then to make a determination whether there has been a violation. Nowhere does the statute mention presenting evidence or weighing legal arguments.

Not only does the statutory description of the investigation lack the characteristics of an adjudication, but the Division was not acting in a judicial capacity during this specific investigation. *Cf. Bennett,* 586 N.W.2d at 519 (holding res judicata applied where "the commission was deciding issues through a procedure substantially similar to those employed by courts and was thus engaged in adjudication"). After George filed the complaint, the Division sent a letter, dated March 26, 2007, to D.W. Zinser notifying it of the complaint and asking it to submit a full and complete written account of the facts and a statement of its position in regard to George's termination. The letter also asked D.W. Zinser to provide a copy of George's personnel file, a list of all employees working with George, and a list of individuals who may have information pertaining to the case. Only nine days later, on April 4, the Division dismissed George's complaint. George claims the Division neither contacted any of the witnesses he listed nor listened to the taped discussions between George and David Zinser. There is no evidence of any steps taken in this brief time that resemble an adjudication as

contemplated in Restatement section 83.  *Cf. Utah Constr.*, 384 U.S. at 422, 394 S. Ct. at 1560, 16 L. Ed. 2d at 661 (the Advisory Board of Contract Appeals was acting in a judicial capacity when it considered the claim in question because "both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings").

In our case, George did not have a full and fair opportunity to present evidence or respond to D.W. Zinser's position.  He had little to no control over the agency's investigation.  The Division did not hold a hearing on the issue.  It only conducted an informal *nine day* investigation.  The parties were not afforded a full and fair opportunity to litigate the matter in dispute.  The only participation by George in the process was the filing of a complaint.  As George, "the victim of a statutory wrong," was not given "initiative or control of [the] enforcement proceeding," it seems inherently unfair to apply the doctrine of res judicata to his claim.  Restatement § 83 cmt. c.

Cases from other states reveal that an agency's investigative findings are not granted preclusive effect.  In *Parson v. Department of Revenue, Alaska Housing Finance Corp.*, 189 P.3d 1032 (Alaska 2008), an employee, Parson, filed a complaint with the Alaska State Commission for Human Rights alleging his termination amounted to racial discrimination and retaliation for numerous complaints.  *Parson*, 189 P.3d at 1034.  After an informal investigation revealed the allegations were not supported by substantial evidence, the Commission dismissed Parson's complaint.  *Id.*  Parson then filed a complaint in superior court. *Id.* at 1035.  The Supreme Court of Alaska determined the doctrine of res judicata did not bar Parson's claim, because "an informal investigation

by Commission staff does not contain the essential elements of adjudication." *Id.* at 1038. As the court pointed out,

> Closure of Parson's case after an informal staff investigation without any kind of adversarial activity or decision on the merits by an independent fact-finder is not a "dismissal with prejudice" and does not give rise to issue or claim preclusion in a subsequent lawsuit in superior court.

*Id.* at 1038. It did not matter to the court that the agency action was a final action subject to judicial review. *Id.* at 1037–38; s*ee also Mac Home Improvement Co. v. Cuyahoga Metro. Hous. Auth.*, 7 Wage & Hour Cas. 2d (BNA) 1425 (Ohio Ct. App. 2000) (res judicata does not apply to an investigative report by the Department of Labor because the administrative investigation was not judicial in nature).

Here the Division, in its investigation of George's complaint and subsequent dismissal, was not "deciding issues through a procedure substantially similar to those employed by courts," and thus, it was not engaged in adjudication. *Bennett*, 586 N.W.2d at 519. At best, the Division decided it did not want to pursue the case. As the Division conducted an investigation, not a hearing, the Division's dismissal of George's complaint should not be given preclusive effect.

**B. Unpaid Wages Claim.** In addition to the retaliatory discharge claim, George also alleges D.W. Zinser failed to pay him wages in violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A. The district court dismissed all claims on the grounds of res judicata. The court of appeals reversed on the issue of unpaid wages, concluding that res judicata did not apply since George never raised the issue of unpaid wages in his complaint to the Division. We agree with the court of appeals. The district court erred in dismissing George's wage claim.

**C.  Exclusive Remedy.**  The district court declined to rule on whether the statutory remedies provided in Iowa Code section 88.9(3) are exclusive.  In its ruling on the defendant's pre-answer motion to dismiss, the court stated that it "defers ruling on the alleged preemption defense until the defendant has presented the preclusion defense . . . and a ruling has been made thereon.  If that ruling favors defendant, the preemption issue is moot."  However, since we are sending the case back for a new trial, we will address the issue.

Our court has yet to determine whether an individual can bring a private cause of action for wrongful discharge in violation of the public policy behind IOSHA.  The Court of Appeals for the Eighth Circuit has held "IOSHA presents a clear and well-recognized statement of public policy" and can be the basis for bringing a private action for wrongful discharge.  *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 899 (8th Cir. 2004).  After a careful review of IOSHA, Iowa Code chapter 88, we conclude an individual can bring a claim of retaliatory discharge for reporting IOSHA violations.

An employee can bring an action for the tort of wrongful discharge when "a protected activity has been recognized through the implementation of an underlying public policy that would be undermined if an employee were discharged from employment for engaging in that activity."  *Davis v. Horton*, 661 N.W.2d 533, 535 (Iowa 2003).  In order to succeed on such a claim, the employee must demonstrate the following four factors:

(1) The existence of a clearly defined public policy that protects an activity.
(2) This policy would be undermined by a discharge from employment.
(3) The challenged discharge was the result of participating in the protected activity.

(4) There was a lack of other justification for the termination.

*Id.*

The first factor is satisfied by the public policy set forth in Iowa Code section 88.9(3), which states "[a] person shall not discharge . . . an employee because the employee has filed a complaint . . . under . . . this chapter." In *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 283 (Iowa 2000), we cited Iowa Code section 88.9(3) as an example of a statute articulating public policy against discharging employees for engaging in certain conduct that would give rise to a common law action for retaliatory discharge.

The fact that the statute creates an administrative remedy does not indicate such a remedy is exclusive. The language in section 88.9(3) is permissive. "An employee who believes that the employee has been discharged . . . in violation of this subsection *may* . . . file a complaint with the commissioner alleging discrimination." Iowa Code § 88.9(3)(*b*)(1) (emphasis added); *cf.* Iowa Code § 216.16(1) ("A person claiming to be aggrieved by an unfair or discriminatory practice *must* initially seek an administrative relief by filing a complaint with the commission . . . ." (Emphasis added.)). If the legislature had intended section 88.9(3) to be the exclusive remedy and preclude a private cause of action, it could have done so expressly.

Although state courts and circuit courts are split on the issue of whether OSHA and the state equivalents preclude common law claims for wrongful discharge, the majority recognize the statutory remedies are not exclusive. *Compare Schweiss v. Chrysler Motors Corp.*, 922 F.2d 473, 475 (8th Cir. 1990) (holding OSHA's "remedial scheme does not pre-empt [plaintiff's] state law wrongful discharge action"); *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295 (Kan. 1998) (remedy provided by OSHA does

not preclude a common law claim for retaliatory discharge); *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427 (Alaska 2004) (plaintiff brought common law claim for retaliatory discharge for filing AKOSH complaints); *Cabesuela v. Browning-Ferris Indus.*, 80 Cal. Reptr. 2d 60 (Cal. Ct. App. 1998) (state's OSHA statute is not an exclusive remedy, and plaintiff permitted to bring common law action for retaliatory discharge), *with Hines v. Elf Atochem N. Am., Inc.*, 813 F. Supp. 550 (W.D. Ky. 1993) (OSHA and the state's version preempt a private cause of action for wrongful discharge); *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73 (D. Colo. 1994) ("Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy.").

We hold that the remedy set forth in Iowa Code section 88.9(3) does not preclude an employee from bringing a common law action for wrongful discharge. The policy of encouraging employees to improve workplace safety and the fact that the statute contains permissive and not mandatory language point in favor of allowing a common law action. Iowa Code §§ 88.1, 88.9(3).[1]

## IV. Conclusion.

The Division's investigation of George's complaint and subsequent dismissal was not an adjudication. Therefore, res judicata does not preclude George's common law action for wrongful discharge in the

---

[1]George was not required to exhaust all administrative remedies and appeal for judicial review under Iowa Code section 19A.19 before bringing his common law claim. The language of Iowa Code section 88.9(3)(*b*)(1) indicates the administrative remedy is permissive. *See Riley v. Boxa*, 542 N.W.2d 519, 522 (Iowa 1996) ("[T]he exhaustion of administrative remedies doctrine does not apply if, by the terms and implications of the statutes authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to permit resort to the courts even though the administrative remedy has not been exhausted." (Quotation marks and citation omitted.)).

district court or his wage claim under chapter 91A. George's wage claim is thus reinstated. Further, the remedy provided in IOSHA is not exclusive, and George may bring a common law action for wrongful discharge in the district court.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED.**